Dr. Clyde B. KELLER, Plaintiff
and Appellee,

v.

SOUTHWOOD NORTH MEDICAL PA-
VILION, INC., a Utah corporation, and
Dr. Robert L. Youngblood, Defendants
and Appellants.

No. 970090.

Supreme Court of Utah.

April 28, 1998.

Vincent C. Rampton, Salt Lake City, for plaintiff.

Harold G. Christensen, Ryan E. Tibbitts, Paul M. Halliday, Salt Lake City, for defendants.

ZIMMERMAN, Justice.

Southwood North Medical Pavilion, Inc., and Dr. Robert L. Youngblood (collectively, "Youngblood") appeal a trial court award of treble damages against them and in favor of Dr. Clyde B. Keller. Keller brought an action against Youngblood for trespass, conversion, and interference with prospective business advantage after Youngblood removed two signs owned by Keller from a business monument. Keller also argued that Youngblood violated Utah's forcible entry statute. The trial court found that Youngblood's removal of the signs violated the forcible entry statute and awarded Keller treble damages under that statute. *See* Utah Code §§ 78–36–1 & –10. On appeal, Youngblood argues that the trial court erred in finding for Keller on his forcible entry claim because Keller failed to plead forcible entry in his complaint, failed to comply with the statute's requirements, and failed to bring his claim within the statute's one-year limitations period.

Youngblood also argues that Keller's access to signage space did not constitute real property and therefore was not covered by the forcible entry statute and argues that the trial court erred in awarding treble damages. We modify the ruling to exclude the treble damages award.

We first review the facts before turning to the standard of review and our analysis. In June of 1991, Keller leased office space from WCJD, Ltd. ("WCJD"), to house his chiropractic business. The space leased was in Southwood Plaza–South, an office building that, together with Southwood Plaza–North, forms the Southwood Medical Pavilion and Plaza ("Medical Pavilion") in Sandy, Utah. The Medical Pavilion has a large monument facing the street. Under the terms of their leases, Medical Pavilion tenants could place signs, typically small brass plaques, on this monument to advertise their services. The standard lease WCJD used for Southwood–Plaza tenants, including Keller, provided that each tenant could put a sign on the monument but that all signs had to "be in keeping with other signs" as to size and location.[1] Keller, however, wanted a larger sign than the other tenants because he did not have an established practice in the area. WCJD agreed to allow him to place a 30–inch by 60–inch sign on each side of the monument, subject to WCJD's approval of the signs. Keller agreed to pay WCJD an additional $50 per month for this privilege. Keller and WCJD memorialized this agreement in an addendum to their lease agreement.[2] WCJD later approved Keller's signs, which were affixed to the monument with construction adhesive.

In June of 1992, WCJD conveyed its interest in the Southwood Plaza–North building and property, including the monument, to Valley Bank & Trust. In October of 1992, Valley Bank & Trust conveyed this property to Southwood North Medical Pavilion, Inc., a corporation Dr. Youngblood formed for the purpose of owning and managing this property. WCJD retained title to Southwood Plaza–South.

Shortly after the conveyance, Youngblood spoke to Keller about his signs. Youngblood told Keller that his signs were "unprofessional" and that they should be removed. At this time, Youngblood was unaware of the addendum to Keller's lease addressing the signs, and Keller was unaware that Youngblood's corporation owned the property on which the monument sits. Keller did not remove the signs.

Approximately fourteen months later, Youngblood removed the two signs during daylight hours and in Keller's absence but without permission from or notice to Keller. Keller objected, and after attempts to resolve the problem failed, he relocated his practice to another building.

Keller then filed suit against Youngblood and his corporation, alleging trespass, conversion, and interference with prospective business advantage. On June 18, 1996, Keller submitted a trial brief addressing these issues. Two days later, Keller submitted a supplemental trial brief, asserting for the first time that Youngblood had violated the forcible entry statute. On June 24, 1996, Youngblood submitted his trial brief, addressing the merits of Keller's forcible entry claim as well as the three original claims. Youngblood did not object to the late asser-

---

1. Paragraph 12 of the WCJD Lease provided:

   *ERECTION AND REMOVAL OF SIGNS:* Tenant may place suitable signs on the Premises for the purpose of indicating the nature of the business carried on by Tenant in the Premises; provided however, that the location and size of such signs shall be in keeping with other signs in the Building where Premises are located.... Tenant shall remove such signs at the expiration of this Lease or earlier termination thereof and repair any damage to the Premises caused by such removal.

2. The addendum provided in pertinent part:

   C. Owner agrees to allow tenant to install at tenant's own expense and risk, two 30 inch by 60 inch flat, non-electric signs, one on each side of the front monument.
   (a) The signs shall not interfere with any existing signs already in place.
   (b) The signs must conform to any and all State or Local code or regulation. Any problems or costs shall be the Tenant's sole risk and expense.
   (c) The design and copy of signs must meet with owners written approval.
   (d) Tenant agrees to pay an additional $50.00 per month for this sign space.

tion of the forcible entry claim as outside the pleadings, nor did he assert a statute of limitations defense or argue that Keller failed to comply with the forcible entry statute's requirements.

The trial court found that Youngblood's actions constituted trespass, conversion, interference with prospective business advantage, and forcible entry, and awarded Keller actual and punitive damages. At the close of trial, Keller reminded the court that under the forcible entry statute, he was entitled to treble damages. The court awarded treble damages but allowed post-trial briefing and a hearing on the treble damages issue. Following this hearing, the court reaffirmed its treble damages award.

On appeal, Youngblood argues that the trial court erred in finding for Keller on the forcible entry claim because (i) Keller failed to plead forcible entry in his complaint, (ii) he failed to satisfy the statute's indorsement requirements, (iii) a special one-year statute of limitations barred recovery, and (iv) Keller's access to signage space did not constitute "real property" within the meaning of the forcible entry statute. We address each question in turn.

■ Youngblood first claims that Keller's failure to include the forcible entry claim in his complaint bars any recovery under Utah's forcible entry statute. Keller responds that the parties tried the claim by implied consent. Rule 15(b) of the Utah Rules of Civil Procedure applies when parties try by express or implied consent issues not raised in the pleadings. Rule 15(b) provides:

> When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any

time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Utah R.Civ.P. 15(b). "A finding of implied consent 'depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.'" *Domar Ocean Transp. v. Independent Refining Co.*, 783 F.2d 1185, 1188 (5th Cir.1986) (quoting *Jimenez v. Tuna Vessel GRANADA*, 652 F.2d 415 (5th Cir.1981)). A party may give implied consent when it does not object to the introduction of evidence at trial. *See General Ins. Co. of Am. v. Carnicero Dynasty Corp.*, 545 P.2d 502, 506 (Utah 1976). However, "[w]hen evidence is introduced that is relevant to a pleaded issue and the party against whom the amendment is urged has no reason to believe a new issue is being injected into the case, that party cannot be said to have impliedly consented to trial of that issue." *Domar Ocean Transp.*, 783 F.2d at 1188.

■ In applying rule 15(b), the trial court should assess whether the parties tried an issue by express or implied consent. *See Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct.App.1987). Once the court concludes that the parties did, the court must treat the issues in all respects as if they had been raised in the pleadings. *See Zions First Nat'l Bank v. Rocky Mountain Irr., Inc.*, 795 P.2d 658, 663 (Utah 1990); *Poulsen v. Poulsen*, 672 P.2d 97, 99 (Utah 1983).[3]

■ Our review of the trial court's application of rule 15(b) is a legal question that we review for "correctness." *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994). However, because the trial court's determination of whether the issues were tried with all parties' "implied consent" is highly fact intensive, we grant the trial court a fairly broad measure of discretion in making that determination under a given set of facts. *See id.* at 939.

---

3. The fact that Keller did not move to amend the pleadings to include his forcible entry claim does not make the trial court's consideration of the claim inappropriate. Rule 15(b) states that "failure so to amend does not affect the result of the trial of ... issues [tried by express or implied consent]." Utah R.Civ.P. 15(b); *see also Clark v.*

*Second Cir. Ct.*, 741 P.2d 956, 957 (Utah 1987) ("[F]ailure to move to amend the pleadings to conform to the evidence does not affect the fact that those issues were in fact tried by the consent of the parties and were therefore before the court.").

■ We conclude that the trial court did not err by addressing the forcible entry issue. The record contains substantial evidence indicating that Youngblood tried the forcible entry claim by implied consent. Youngblood made no objection before or during trial to the presentation of evidence related to the forcible entry issue, and both parties substantively addressed the issue in their trial briefs. Importantly, Youngblood reviewed Keller's supplemental trial brief that outlined the forcible entry claim before he submitted his trial brief. Instead of objecting to the claim as being outside of the pleadings or barred by a defense, Youngblood addressed the claim on the merits. And both parties addressed the issue again during closing argument. Keller's attorney stated:

> [Youngblood] violated the forcible entry statute.... We have, likewise, relied on the proposition that the removal and destruction of the sign constituted forcible entry. And there was a suggestion in [defendant's trial] brief ... that the forcible entry statute does not apply. It clearly applies. It couldn't be more apropos in this situation.... There is a suggestion in [defendant's trial] brief that somehow [the statute] applies only to houses or enclosures. I don't read that in the statute and I saw no case law for the proposition, nor do I know of [any] anywhere else. It's intended to apply to all leaseholds, property. This was property. It was a fixture permanently affixed subject to a valid leasehold.

Youngblood's attorney responded by arguing that the sign was not real property, was not a fixture, and was not permanently attached. Because these facts are enough to support the conclusion that Youngblood tried the forcible entry claim by implied consent, we find that the court properly considered this issue.

■ In a post-trial brief, Youngblood for the first time argued that the one-year statute of limitations of section 78–12–29(2) barred the forcible entry claim and that the court's failure to indorse on the summons the number of days within which the defendant must appear, as required by section 78–36–8 of the Code, precluded recovery under the statute. We find that both of these defenses were waived.

■ Under rule 12 of the Utah Rules of Civil Procedure, "[a] party waives all defenses and objections which he does not present either by motion ... or, if he has made no motion, in his answer or reply." Utah R.Civ.P. 12(h). A party waives a statute of limitations defense by failing to raise it in a responsive pleading or by motion before submitting a responsive filing. *See Staker v. Huntington Cleveland Irr. Co.,* 664 P.2d 1188, 1190 (Utah 1983); Utah R.Civ.P. 12(h). Likewise, a party's failure to comply with section 78–36–8's indorsement requirement is a waiveable defense. *See Fowler v. Seiter,* 838 P.2d 675, 678 (Utah Ct.App.1992). Because Youngblood failed to raise the statute of limitations[4] and statutory compliance defenses before he submitted a response—in this case his trial brief—he waived those defenses.[5]

4. Assuming, arguendo, that a one-year limitations period applies, the statute of limitations defense fails even if Youngblood did not waive it. Youngblood bases his statute of limitations defense on the fact that more than one year elapsed between his removal of the sign and Keller's first mention of the forcible entry claim. This argument, however, ignores the fact that rule 15(c) of the Utah Rules of Civil Procedure provides that amended claims relate back to the date of the original filing.

Rule 15(c) provides that a claim asserted in an amended pleading relates back to the date of the original pleading whenever the claim "arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." Utah R.Civ.P. 15(c). Because the parties tried the forcible entry claim by implied consent, Keller's complaint was amended for purposes of rule 15. Further, because the forcible entry claim arose out of the same conduct set forth in Keller's original complaint, rule 15(c) applies. Accordingly, a one-year statute of limitations would not bar Keller's claim because the 15(b) amendment relates back to the filing date of Keller's complaint. Because we find that Dr. Youngblood waived the statute of limitations defense, we need not decide whether a one-year limitations period, in fact, applies to a forcible entry claim.

5. We recognize that rule 15 of the Utah Rules of Civil Procedure can operate as an exception to the general rule that a party waives a defense by failing to raise it in a responsive filing. Under rule 15(a), a party may amend its pleading to assert a defense that it failed to raise in a respon-

Moreover, Youngblood expressly waived these defenses during the post-trial hearing on the treble damages issue. Youngblood's attorney stated:

> After reading [plaintiff's] memorandum on the issue of waiver, I'm reluctantly inclined to agree that, although my predecessor counsel certainly should have objected, he didn't. And based upon that, I do think that those issues, [failure to plead forcible entry, statute of limitations, and statutory compliance] are probably waived. And so I'm not going to contest those.

Finding that the trial court did not err in considering the forcible entry claim and that Youngblood waived any defenses, we now review the trial court's application of the forcible entry statute to the facts. Youngblood argues that the district court erred in finding a forcible entry because neither Keller's sign nor his access to signage space constituted real property. The forcible entry statute provides:

> Every person is guilty of a forcible entry, who either:
>
> (1) by breaking open doors, windows or other parts of a house, or by fraud, intimidation or stealth, or by any kind of violence or circumstances of terror, enters upon or into *real property;* or,
>
> (2) after entering peaceably upon *real property*, turns out by force, threats or menacing conduct the party in actual possession.

Utah Code Ann. § 78–36–1 (emphasis added). The district court made three conclusions of law pertinent to the "real property" issue. It ruled that the monument was real property because it "was permanently affixed to real property"; that Keller's lease gave him "a valid and enforceable leasehold interest" in the monument; and that Keller's lease rights in the monument "constituted a leasehold in realty." The district court then concluded that Youngblood committed a forcible entry "in that [he] forcibly deprived plaintiff of peaceable possession of his leasehold by self-help."

Because the trial court's finding of a forcible entry turns on its conclusion that Keller had a valid leasehold in real property, we must first determine if a leasehold existed. This determination is a question of law that we review for correctness. *See Pena,* 869 P.2d at 936.

■ A lease "conveys an interest in land and transfers possession." 49 Am.Jur.2d *Landlord and Tenant* § 21 (1995). A lease must convey a definite space and must transfer exclusive possession of that space to the lessee. *See id.* In contrast, a license in real property "is the permission or authority to engage in a particular act or series of acts upon the land of another without possessing an interest therein," 25 Am.Jur.2d *Easements and Licenses* § 137 (1996), and is "subject to the management and control retained by the owner." 49 Am.Jur.2d *Landlord and Tenant* § 21 (1996).

■ In determining whether an instrument creates a lease or a license, "the intention of the parties as ascertained from the instrument itself" prevails. *Id.* However, a court is not bound by the parties' characterization of their transaction or by any title they may have given a writing. 25 Am. Jur.2d *Easements and Licenses* § 137 (1996).

■ We find that the lease agreement and the addendum gave Keller a license, not a leasehold interest. First, under paragraph 12 of his lease, Keller, like all other tenants, had permission to place a sign on the monument. Paragraph 12 did not transfer possession of any part of the monument to Keller, did not assign any definite space to him, and did not give him exclusive possession of any space on the monument. Further, WCJD retained management and control of the monument under paragraph 12.

The addendum covering Keller's signs did nothing to convert this license into a leasehold. Instead, the addendum merely altered paragraph 12's requirement that tenants could only place signs that were "in keeping

sive pleading if the party has leave of the court or consent of the adverse party. *See Staker v. Huntington Cleveland Irr. Co.,* 664 P.2d 1188, 1190 (Utah 1983). However, because Youngblood ex-

pressly waived his defenses in the post-trial hearing, he cannot avail himself of rule 15 to revive his defense.

with other signs" on the monument. That is, the addendum gave Keller a license to place a larger sign on the monument.

For the benefit of the bench and bar, we think it useful to address whether the forcible entry statute would apply if Keller had had a valid leasehold interest. In other words, is a sign affixed to a structure on real property the type of property intended to be covered by the forcible entry statute? To understand the type of property covered by the forcible entry statute, we briefly review its history.

At common law, a landlord could use self-help to forcibly enter a tenant's premises and evict the tenant without running the risk of incurring civil liability. *See* Randy G. Gerchick, Comment, *No Easy Way Out: Making the Summary Eviction Process a Fairer and More Efficient Alternative to Landlord Self–Help*, 41 UCLA L.Rev. 759, 776 (1994). After realizing the potential for violence that this rule of law created when a landlord used self-help to expel a tenant, many states passed forcible entry and detainer statutes.[6] *Id.* Addressing the constitutionality of Oregon's forcible entry statute, the United States Supreme Court stated:

> The landlord-tenant relationship was one of the few areas where the right to self-help was recognized by the common law of most States, and the implementation of this right has been fraught with "violence and quarrels and bloodshed." ... Hence, the Oregon statute was enacted in 1866 to alter the common law and obviate resort to self-help and violence. The statute, intended to protect tenants as well as landlords, provided a speedy, judicially supervised proceeding to settle the possessory issue in a peaceful manner.

*Lindsey v. Normet*, 405 U.S. 56, 71–72, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972); *see also Paxton v. Fisher*, 86 Utah 408, 45 P.2d 903, 906 (1935) (noting that purpose of forcible

entry statute is "to provide a speedy remedy, summary in character, to obtain possession of real property" and thereby prevent those seeking possession from taking "the law into their own hands"). Forcible entry statutes were designed primarily to help landlords and tenants settle disputes regarding possession and occupancy of real property. *See Buchanan v. Crites*, 106 Utah 428, 150 P.2d 100, 105 (1944) (Larson, J., concurring) (stating that forcible entry statute "has to do with actions to obtain possession, or protect one in retaining his *occupancy* of real property" (emphasis added)). Thus, we conclude that the forcible entry statute only protects types of property that people can occupy. A sign is not this type of real property, and therefore, the forcible entry statute does not apply in this situation.

We hold that the trial court incorrectly concluded Keller had a leasehold interest in real property. Because Keller had no interest in real property, the trial erred in applying the forcible entry statute.

Judgment modified to exclude treble damages.

HOWE, C.J., DURHAM, Associate C.J., and BRYNER, Judge, concur in Justice ZIMMERMAN's opinion.

RUSSON, Justice, concurring in the result:

I write separately only to express my disapproval of the majority's advisory opinion. After concluding that the agreement and addendum gave Keller a license, not a leasehold interest, the majority states, "For the benefit of the bench and bar, we think it useful to address whether the forcible entry statute would apply if Keller had had a valid leasehold interest." Because no leasehold interest exists in this case, the issue as to whether the forcible entry statute applies to leasehold interests is not ripe for review. I see no reason to depart from our sound judicial

---

6. Before institution of forcible entry statutes, English common law permitted one entitled to possession of land to use any force reasonably necessary—short of force threatening death or serious bodily injury—to regain possession from another wrongfully withholding the land. In 1381, England, under Richard II, passed a statute criminal-

izing the use of force to regain possession of land. In 1840, the statute was held to provide a basis for civil liability. *See* Gerchick, *supra*, at 773–75. In 1872, Utah adopted a forcible entry statute modeled after the English statute. *See* Compiled Laws of Utah ch. 8, § 1196 (1872).

policy against rendering advisory opinions. *See Stewart v. Utah Public Serv. Comm'n,* 885 P.2d 759, 784–85 (Utah 1994) (Howe, J., dissenting) ("[I]t is not the province of this court 'to exercise the delicate power of pronouncing a statute unconstitutional in abstract, hypothetical, or otherwise moot cases' such as the one now before us." (quoting *Hoyle v. Monson,* 606 P.2d 240, 242 (Utah 1980))); *Olson v. Salt Lake City School Dist.,* 724 P.2d 960, 962 n. 1 (Utah 1986) ("This court will not issue advisory opinions."); *Justheim v. Division of State Lands,* 659 P.2d 1075, 1077 (Utah 1983) (where question is not ripe for adjudication, court's function is not to render advisory opinions); *Black v. Alpha Fin. Corp.,* 656 P.2d 409, 410–11 (Utah 1982) ("Judicial policy dictates against our rendering an advisory opinion."); *Merhish v. H.A. Folsom & Assoc.,* 646 P.2d 731, 732 (Utah 1982) ("[S]trong judicial policy against issuing advisory opinions dictates that courts refrain from adjudicating moot questions."); *State v. Kallas,* 97 Utah 492, 504, 94 P.2d 414, 424 (1939) (refusing to address constitutionality of statute where determination not relevant to party's rights).

Having disqualified himself, Justice Stewart does not participate herein; District Judge Bryce K. Bryner sat.