2010 UT 29

D.A. OSGUTHORPE, in his capacity as Trustee of the Dr. D.A. Osguthorpe Trust; and D.A. Osguthorpe Family Partnership, Petitioners and Appellants,

v.

WOLF MOUNTAIN RESORTS, L.C.; Petitioner and Appellant,

v.

ASC Utah, Inc., in its own stead; ASC Utah, Inc., as the representative of a defendant class consisting of ASC Utah, Inc., skiers, contractors, all other invitees and successors trespassing on plaintiffs' real property under color of both ASC Utah, Inc.'s claim of right as a lessee from Wolf Mountain Resorts, L.C., and ASC Utah, Inc.'s claim of right as a lessee directly from plaintiffs, Respondents and Appellees.

Nos. 20080770, 20090042, 20090043.

Supreme Court of Utah.

May 7, 2010.

David W. Scofield, R. Reed Pruyn Gold-
stein, Thomas W. Peters, Salt Lake City, for
petitioners D.A. Osguthorpe and D.A. Osgu-
thorpe Family Partnership.

Victoria C. Fitlow, Park City, for petition-
er Wolf Mountain Resorts, L.C.

John R. Lund, Kara L. Pettit, Julianne P.
Blanch, Rodney R. Parker, Michael M. Ho-
mer, Brian D. Bolinder, Jesse C. Trentadue,
Salt Lake City, for respondents.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case presents questions regarding
the purpose and applicability of Utah's un-
lawful detainer statute. Appellants D.A. Os-
guthorpe and the D.A. Osguthorpe Family
Partnership (collectively the "Osguthorpes")
appeal the district court's dismissal of their
unlawful detainer claims against American
Skiing Company ("American Skiing") and
Wolf Mountain Resorts ("Wolf Mountain").
Wolf Mountain cross-appeals the district
court's dismissal of its cross-claims against
American Skiing for indemnification, breach
of contract, and breach of implied covenant of
good faith. The district court dismissed the
unlawful detainer claims and cross-claims.
In so doing, it found that there was a dispute
as to whether American Skiing and Wolf
Mountain were tenants in possession of the

Osguthorpes' land in Summit County, Utah (the "Property") and concluded that this uncertainty precluded an unlawful detainer action. We affirm the district court's dismissal of the unlawful detainer action and cross-claims because we hold as a matter of law that American Skiing and Wolf Mountain were not tenants in possession of the Property as required by Utah's unlawful detainer statute.

## BACKGROUND

¶ 2 The controversies between these parties stem from a series of agreements dictating each party's right to use the Property. The Osguthorpes are the fee owners of the Property, where they operate a sheep and cattle ranching operation in the summer months. On August 14, 1996, the Osguthorpes entered into an agreement (the "Lease Agreement") with Wolf Mountain allowing it to utilize the Property for its ski operation in the winter months. The Lease Agreement allowed "the installation, maintenance and operation of two ski lifts, snow making and clearing of ski trails and other related facilities, structures and roads as may be required." The Osguthorpes retained the right "to improve and use the Property provided that such improvement or use not interfere with ski lifts and similar structures and runs." The Lease Agreement refers to the Osguthorpes as "lessors" and Wolf Mountain as "lessees."

 ¶ 3 In 1997, Wolf Mountain and American Skiing entered into a Ground Lease Guaranty (the "Guaranty") that transferred Wolf Mountain's rights in the Property to American Skiing.[1] In 2001, American Skiing renegotiated the terms of the 1996 Lease Agreement with the Osguthorpes. The results of the renegotiation are reflected in a "Restatement of Agreement" between American Skiing and the Osguthorpes. This Restatement of Agreement indicates that it supersedes and restates the original Lease Agreement. It describes American Skiing's interest in the Property as an "Easement"[2] rather than a "Lease" and gives both parties rights to use the Property, but limits interference with the other's uses. The Restatement of Agreement provides:

> [American Skiing] acknowledges that under the documents Osguthorpe and Partnership have retained the right to use all of the Property as part of their ranch operation, including, without limitation, grazing and other activities in connection with their sheep and cattle operation, and to otherwise use and improve the Property, so long as such ranch operations and other use and improvements do not damage the towers or other facilities lawfully

---

**1.** Attached as Exhibit "A" to Wolf Mountain's Answer and Cross–Complaint is the "Ground Lease Guaranty" pursuant to which American Skiing assumes all rights and obligations of the original "Lease Agreement" between the Osguthorpes and Wolf Mountain. Wolf Mountain asserts that the Guaranty forbids American Skiing from modifying the terms of the Lease Agreement with the Osguthorpes without Wolf Mountain's express written authorization. But nothing in the attached version of the Guaranty requires such authorization. It states:

> [T]his Guaranty shall be absolute and unconditional and shall remain and continue in full force and effect as to any renewal, extension, amendment, addition, assignment, sublease, transfer, or other modification of the lease, whether or not the undersigned shall have knowledge or have been notified of or agreed or consented....

There is no language suggesting that Wolf Mountain's prior approval is needed before American Skiing and the Osguthorpes may modify the terms of the original Lease Agreement. In their briefing before this court, Wolf Mountain and American Skiing refer to a "section 11 indemnifi-

cation clause." However, we can find no such clause in the Guaranty.

**2.** The execution of the Restatement of Agreement corresponds to a lawsuit between the Osguthorpes and their former business partner, Enoch Richard Smith. Apparently, the Osguthorpes, who were obligated to share with Smith the proceeds from any lease of the Property, had taken the position that no money was owed to Smith because they had not "leased" the property but rather granted an "easement." Without making a determination on whether the Restatement of Agreement constituted a lease or an easement, the court in *Smith v. Osguthorpe* held that Smith was entitled to a share of the proceeds. 2002 UT App 361, ¶¶ 37–38, 58 P.3d 854. In this appeal, the Osguthorpes now argue this prior holding precludes us from deciding that the Restatement of Agreement is anything but a lease. We are unpersuaded. Because this appeal does not involve the same parties as the *Smith* case, there is no basis for applying the doctrine of res judicata.

constructed on the Property by [American Skiing] ... and does not unreasonably interfere with the use of the Property by [American Skiing] in the winter as part of [American Skiing's] winter skiing operation. [American Skiing] agrees that the use of the Property during the spring, summer and fall months will not interfere with the ranch operations of Osguthorpe and Partnership.

It is this Restatement of Agreement that the Osguthorpes attached to their initial unlawful detainer complaint as evidence of a lease.

¶ 4 The Osguthorpes' complaint contained three separate causes of action seeking: (1) eviction of Wolf Mountain, allegedly in unlawful detainer, (2) eviction of American Skiing, allegedly in unlawful detainer, and (3) eviction of a defendant class. In support of their eviction action against American Skiing, the Osguthorpes asserted that American Skiing committed waste by destroying crops on the Property meant to feed the Osguthorpes' sheep and by leaving snowmaking equipment on the Property that allegedly killed at least seven sheep. American Skiing countered with a motion to dismiss pursuant to Utah Rule of Civil Procedure 12(b)(6), claiming that eviction under the unlawful detainer statute was not available because it was not a tenant in possession of the Property.

¶ 5 The district court entered an order on September 2, 2008, dismissing counts two and three of the Osguthorpes' complaint stating, "[t]he court does not believe that an action for unlawful detainer is appropriate where the parties dispute whether the tenant is in fact a tenant of real property and the nature of their agreement under which the premises are held." The Osguthorpes moved for permission to seek an interlocutory appeal of that order, which the court granted.

¶ 6 Meanwhile, Wolf Mountain answered count one of the Osguthorpes' complaint, admitting it was a tenant in unlawful detainer, and asserting cross-claims against American Skiing for indemnification, breach of contract, and breach of the covenant of good faith and fair dealing. American Skiing, troubled by the implications of Wolf Mountain's admission that Wolf Mountain was in unlawful detainer of the Property, filed a motion to dismiss both the eviction action against Wolf Mountain and Wolf Mountain's cross-claims. In December 2008, the district court dismissed count one of the Osguthorpes' complaint, as well as all of Wolf Mountain's cross-claims. The Osguthorpes and Wolf Mountain appeal this final order. Their appeal has been consolidated with the Osguthorpes' previously filed interlocutory appeal.

¶ 7 The Osguthorpes argue that the district court erred in dismissing their claims. Specifically, they argue that the district court erred in concluding that unlawful detainer actions could not lie when the parties disputed whether the interest at issue was a lease interest or an easement. The Osguthorpes also argue that the district court erred when it considered American Skiing's motion to dismiss the unlawful detainer action against Wolf Mountain because American Skiing, having been dismissed from the action, lacked standing to file the motion. Wolf Mountain argues that the district court erred in dismissing its cross-claims against American Skiing because it sufficiently pled facts on which relief could be granted and the district court's ruling "eviscerates" its original Lease Agreement with the Osguthorpes.

¶ 8 American Skiing counters that the dismissal of the unlawful detainer action was proper because neither Wolf Mountain nor American Skiing is a tenant in possession of the Property. It further argues that the district court was not bound by any prior judicial determination that the Restatement of Agreement constituted a lease and American Skiing could properly move to dismiss the Osguthorpes' eviction action against Wolf Mountain because an eviction of Wolf Mountain would constitute an eviction of American Skiing.

¶ 9 We hold that the district court properly dismissed the unlawful detainer claims because, as a matter of law, American Skiing does not qualify as a tenant in possession under the Utah unlawful detainer statute. *See* Utah Code Ann. § 78B–6–802 (2008). We also hold that American Skiing continued to retain party status in the action even after the entry of the district court's interlocutory order dismissing the Osguthorpes' claims

against it and therefore was entitled to seek dismissal of the Osguthorpes' unlawful detainer claim against Wolf Mountain. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

■ ¶ 10 "A district court's grant of a motion to dismiss based upon the allegations in the plaintiff's complaint[ ] presents a question of law that we review for correctness." *Walker v. Stowell*, 2009 UT 82, ¶ 7, 227 P.3d 242 (internal quotation marks omitted). In reviewing a dismissal under Rule 12(b)(6) of the Utah Rules of Civil Procedure, we "accept the plaintiff's description of facts alleged in the complaint to be true, but we need not accept extrinsic facts not pleaded nor need we accept legal conclusions in contradiction of the pleaded facts." *Allred v. Cook*, 590 P.2d 318, 319 (Utah 1979). Furthermore, "it is well established that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record," even if it "differs from that stated by the trial court." *First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137.

¶ 11 The Osguthorpes alleged in their complaint that the Restatement of Agreement with American Skiing constitutes a lease for purposes of the unlawful detainer statute and that American Skiing is therefore a tenant in possession of the Property. Because these are legal conclusions rather than pleaded facts, we need not accept them as true. And although the trial court dismissed the unlawful detainer claims because it concluded that the relationship between the parties was unclear, we can uphold the dismissal of the unlawful detainer claims on the ground that, as a matter of law, the Restatement of Agreement was not a lease and American Skiing is not a tenant in possession of the Property.

## DISCUSSION

### I. AMERICAN SKIING PROPERLY FILED A MOTION TO DISMISS THE EVICTION ACTION AGAINST WOLF MOUNTAIN

■ ¶ 12 As discussed, the district court initially granted American Skiing's motion to dismiss the Osguthorpes' unlawful detainer action against American Skiing. Subsequent to the entry of the district court's order dismissing that claim, American Skiing filed a second independent motion to dismiss the Osguthorpes' unlawful detainer claim against codefendant Wolf Mountain. The Osguthorpes and Wolf Mountain challenge American Skiing's right to have brought the second motion.

¶ 13 The parties, as well as the district court, characterize the Osguthorpes' challenge to the second motion to dismiss as an issue of American Skiing's standing. The Osguthorpes claim American Skiing lacked standing to file the motion to dismiss because, upon the dismissal of the Osguthorpes' claims against American Skiing, American Skiing was no longer a party to the action. We disagree with the Osguthorpes' claim that American Skiing was no longer a party to the action. We also disagree with their characterization of the issue as one of standing.

■ ¶ 14 "[I]n Utah, ... standing is a jurisdictional requirement." *Brown v. Div. of Water Rights*, 2010 UT 14, ¶ 12, 228 P.3d 747. A challenge to a party's standing "rais[es] fundamental questions regarding a court's basic authority over the dispute." *Id.* ¶ 13. As such, a challenge to standing is generally directed at a plaintiff and questions whether that plaintiff meets the jurisdictional requirements to air a particular grievance in court. Where a plaintiff meets the jurisdictional requirements to bring a cause of action, there is no need to evaluate whether a defendant has standing to defend the action. Here, there has been no challenge to the court's jurisdiction to hear the Osguthorpes' claims and therefore an analysis of American Skiing's standing is unnecessary. Rather, we hold that American Skiing remained a party to the action after the dismissal of the Osguthorpes' unlawful detainer claim against American Skiing, giving it the right to file a motion to dismiss the Osguthorpes' remaining claims against Wolf Mountain.

■ ¶ 15 A party does not lose its party status in a litigation action when the dis-

trict court issues a non final order dismissing the claims against that party. Until the district court finally disposes of all claims in an action, it remains free to revisit its rulings. *See Hall v. Dep't of Corr.*, 2001 UT 34, ¶ 12, 24 P.3d 958 (A party must remain a part of the action where "'a trial court is free to reassess its decision at any point prior to entry of a final order or judgment.'") (quoting *Ron Shepherd Ins., Inc., v. Shields,* 882 P.2d 650, 654 (Utah 1994)); *see also Powell v. Cannon,* 2008 UT 19, ¶ 11, 179 P.3d 799 ("For an order or judgment to be final, it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case.") (Internal quotation marks omitted.). Therefore, all parties retain their party status whenever there are pending claims or cross-claims in an action.

¶ 16 In this case, the district court dismissed the Osguthorpes' claims against American Skiing, but did so in a non final order. The district court, therefore, still retained jurisdiction over American Skiing and was capable of revisiting its dismissal order at any time prior to the entry of a final judgment. Additionally, American Skiing was a named defendant in the pending cross-claims that Wolf Mountain had filed in the action.

¶ 17 Although it is clear that American Skiing remained a party to the action, the Osguthorpes assert that it was not entitled to file a motion seeking to dismiss a claim in which it was not named as a defendant. We disagree. Although the precise issue appears to be one of first impression in Utah, cases from other jurisdictions analyzing the similar situation of an intervenor's right to file motions once it becomes a party to an action persuade us to hold that any party to a lawsuit has the right to defend against any and all claims in the action.

¶ 18 Once an intervenor becomes a party to an action, it is able to file a motion to dismiss all of the plaintiff's claims against the named defendant. *See e.g., Crystal v. Grzywna,* 1992 WL 257788, at *1, 1992 Conn.Super. LEXIS 2782, at *1 (Conn.Super.Ct., Sept. 17, 1992) (where "[s]imultaneous to filing the motion to intervene, [defendant-intervenor] filed a motion to dismiss the appeal on the ground that the court does

not have jurisdiction over the subject matter of the appeal"); *In re Sander Johnson,* 173 N.W.2d 475, 476 (N.D.1970) (where "[s]imultaneously with its motion to intervene, the [intervenor] moved to dismiss the appeal on the ground that the court lacked jurisdiction"); *Lofino Props., L.L.C. v. Wal–Mart Stores, Inc.,* 2004 WL 225473, at *1, 2004 Ohio App. LEXIS 413, at *3 (Ohio Ct.App. Feb. 3, 2004) (where "the intervening parties filed a motion to dismiss or in the alternative a motion for summary judgment"). In other words, upon proper intervention, a party has the ability to file any relevant motions regarding the subject matter of the claims.

¶ 19 As discussed, American Skiing remained a party to the action even after the district court granted its motion to dismiss. As a party, American Skiing was entitled to file any motions regarding the claims at issue in the lawsuit, including a motion to dismiss the Osguthorpes' unlawful detainer claim against Wolf Mountain. Indeed, any decision to the contrary would contravene all notions of fundamental fairness. Because American Skiing's rights to the Property are derivative of Wolf Mountain's rights, any decision implicating Wolf Mountain's rights would necessarily have implications on American Skiing's ability to operate its ski resort. For example, a judgment holding that Wolf Mountain had breached its Agreement with the Osguthorpes and was therefore in unlawful detainer of the Property could preclude American Skiing from exercising its rights to operate the ski resort under the principles of res judicata. This would result in American Skiing being forced off the Property without any recourse. In short, fundamental fairness, in addition to American Skiing's party status, dictate the conclusion that American Skiing's motion to dismiss was properly before the district court.

## II. THE DISTRICT COURT PROPERLY DISMISSED THE OSGUTHORPES' UNLAWFUL DETAINER CLAIMS BECAUSE THE LEASE AGREEMENT AND THE RESTATEMENT OF AGREEMENT DID NOT TRANSFER POSSESSION OF THE PROPERTY

¶ 20 A trial court may dismiss an action if the complaint "fail[s] to state a claim.

upon which relief can be granted." Utah R. Civ. P. 12(b)(6). But a motion to dismiss should be granted only when "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Mack v. Utah Dep't of Commerce*, 2009 UT 47, ¶ 17, 221 P.3d 194 (internal quotation marks omitted). " 'A rule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts.' " *Helf v. Chevron U.S.A., Inc.*, 2009 UT 11, ¶ 14, 203 P.3d 962 (quoting *Oakwood Vill., L.L.C. v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226). In this case, the district court correctly granted American Skiing's motions to dismiss because the facts pled by the Osguthorpes do not entitle them to relief under the unlawful detainer statute.

¶ 21 To be guilty of unlawful detainer, a party must be a tenant in possession of real property and must have violated a term of the lease, committed waste, remained on the property beyond the legal term of the lease, or engaged in any such acts enumerated in Utah Code sections 78B–6–802(1)(a)–(h) (2008). In this case, the Osguthorpes are not entitled to relief because, under the facts they allege, neither American Skiing nor Wolf Mountain is a tenant in possession of the Property.

*A. The Utah Unlawful Detainer Statute Establishes a Summary Proceeding to Award an Aggrieved Landlord the Lawful Possession of Property and to Compensate for the Loss of That Possession*

¶ 22 Utah's unlawful detainer statute provides landowners with a "summary remedy to recover possession" of their property from their tenants who may be in violation of a lease provision. *Buchanan v. Crites*, 106 Utah 428, 150 P.2d 100, 108 (1944). The statutory procedure for an unlawful detainer claim mandates a three-day window for a tenant, served with notice, to either quit the premises or "save the lease from forfeiture." *See* Utah Code Ann. § 78B–6–802(2) (2008). The statute also provides specific procedures for the service of that notice, *id.* § 78B–6–805, which "must

be strictly complied with in order to enforce the obligations imposed by [the statute]." *Perkins v. Spencer*, 121 Utah 468, 243 P.2d 446, 449 (1952). These provisions evidence a legislative intent to create a mechanism for quickly and clearly resolving conflicts over lawful possession of property between landowners and tenants.

¶ 23 "The basis of a suit in unlawful detainer is unlawful possession." *Carstensen v. Hansen*, 107 Utah 234, 152 P.2d 954, 955 (1944). We have held that "one of the primary purposes of the unlawful detainer statute is to provide a speedy resolution on the issue of possession...." *See Bichler v. DEI Sys., Inc.*, 2009 UT 63, ¶ 29, 220 P.3d 1203. Under the statute, "the plaintiff shall only be required to show ... that he was peaceably in the actual possession at the time of the forcible entry, or was entitled to the possession at the time of the forcible detainer." Utah Code Ann. § 78B–6–809(1). The statute provides a process to put the appropriate party back in possession of the disputed property and includes a "severe remedy" when a tenant is in unlawful possession. *Sovereen v. Meadows*, 595 P.2d 852, 853 (Utah 1979) *see also* Utah Code Ann. §§ 78B–6–801 to –816. A land owner may receive treble damages from a tenant who is in unlawful detainer in violation of a lease agreement. *See* Utah Code Ann. § 78B–6–811(3). This is evidence of a strong desire by the legislature to create a mechanism pursuant to which owners can be restored to possession of their property.

¶ 24 Because the unlawful detainer statute applies only in cases where an owner of property is unlawfully deprived of possession, the touchstone for availability of unlawful detainer proceedings is the unlawful possession of property. The unlawful detainer statute is not the appropriate vehicle for litigating disputes over non-possessory interests in property such as disputes over the scope of a license or an easement agreement. Thus, we must determine whether the original Lease Agreement or the Restatement of Agreement transferred a possessory interest in the Property from the Osguthorpes to either Wolf Mountain or American Skiing.

## B. Neither American Skiing Nor Wolf Mountain Are Tenants in Possession of the Property

¶ 25 Neither the original Lease Agreement nor the Restatement of Agreement transferred possession of the Property. "A lease 'conveys an interest in land and transfers possession.'" *Keller v. Southwood N. Med. Pavilion,* 959 P.2d 102, 107 (Utah 1998) (quoting 49 Am. Jur. 2d *Landlord and Tenant* § 21 (1995)). "The uses a possessor in land may make of the space within his possession are, in general, undefined and are limited only by the rights of others, while the uses an owner of a nonpossessory interest may make are definitely limited in their scope." Restatement (First) of Property: Easements introductory note (1944). Additionally, one with a possessory interest has the right and intention "to exclude other members of society in general from any present occupation of the land." Restatement (First) of Property § 7 (1936).

¶ 26 To determine whether the Osguthorpes conveyed a possessory interest in the Property, we look to the plain language of the written instruments. *See Keller,* 959 P.2d at 107. "However, a court is not bound by the parties' characterization of their transaction or by any title they may have given in writing." *Id.* We conclude that the plain language of the Lease Agreement and the Restatement of Agreement do not confer a possessory interest on Wolf Mountain or American Skiing because those agreements limit American Skiing's and Wolf Mountain's use of the Property and allow the Osguthorpes to retain their possessory interest.

¶ 27 The language of the initial Lease Agreement between Wolf Mountain and the Osguthorpes limited Wolf Mountain's use of the Property to a "commercial recreational area" and did not allow Wolf Mountain to exclude others from the Property. It specified the infrastructure that Wolf Mountain could build, including ski lifts, snow-making equipment and similar structures required for a ski area. In short, the language of the Lease Agreement limited Wolf Mountain in its use of the land, which is characteristic of a nonpossessory interest. *See* Restatement (First) of Property: Easements introductory note (1944).

¶ 28 The Lease Agreement also specified, "[n]otwithstanding the rights granted to Wolf Mountain herein, D.A. Osguthorpe shall be permitted to improve and to use the Property provided that such improvement or use does not interfere with ski lifts and similar structures and runs of Lessee." Thus, the Osguthorpes retained the specific right to possess the Property. Such an arrangement is not consistent with conveyance of a possessory interest to Wolf Mountain.

¶ 29 The 2001 Restatement of Agreement between American Skiing and the Osguthorpes uses similar language limiting American Skiing's use of the Property and reserving the Osguthorpes' possessory interest. It incorporates the original Lease Agreement language limiting American Skiing's use of the Property to "a commercial recreational area." It also specifies that the Osguthorpes "have retained the right to use all of the Property as part of their ranch operation ... and to otherwise use and improve the Property, so long as such ranch operations and other use and improvements do not damage the towers or other facilities lawfully constructed on the Property by [American Skiing]." In granting rights to American Skiing to operate the ski area, the Osguthorpes specifically retained their rights to continue to use and possess the Property. Because the Osguthorpes retained possession, they could not have granted exclusive possession to American Skiing. In short, neither Wolf Mountain nor American Skiing has ever been in exclusive possession of the Property [3].

¶ 30 The Osguthorpes argue they are not bound by the Restatement of Agreement and can evict Wolf Mountain because American Skiing did not have the authority to restate

---

3. The Osguthorpes argue that the district court erred in dismissing their third claim for relief—the eviction of a defendant class—based on the court's erroneous finding that American Skiing was not in unlawful detainer. Because we hold that American Skiing was not in exclusive possession and thus not in unlawful detainer, we uphold the district court's dismissal of count three.

**1008**

the original agreement as a subtenant of Wolf Mountain. We disagree. Neither the original Lease Agreement nor the Restatement of Agreement conveyed the requisite possessory interest in the Property. Because there is no set of facts that would entitle the Osguthorpes to relief under the unlawful detainer statute, the district court properly dismissed their claims.

*C. Wolf Mountain's Cross–Claims Fail as a Matter of Law Because Their Alleged Injury Does Not Materialize if American Skiing Is Not in Unlawful Detainer*

¶ 31 Having determined that neither Wolf Mountain nor American Skiing is subject to an unlawful detainer action because they lack the requisite possessory interest in the Property, we also hold that the district court properly dismissed Wolf Mountain's cross-claims against American Skiing for indemnification and breach of the covenant of good faith and fair dealing.

¶ 32 As previously explained, American Skiing and Wolf Mountain entered into a Ground Lease Guaranty, pursuant to which Wolf Mountain transferred to American Skiing its rights to use the Property. The Guaranty included provisions to protect Wolf Mountain in the event that American Skiing breached the terms of the original Lease Agreement, and against any "renewal, extension, amendment, addition, assignment, sublease, transfer, or other modification of the [original] lease." Thus, any liability on the part of American Skiing under the Guaranty is contingent upon its actual breach of the original Lease Agreement or the Restatement of Agreement.

¶ 33 Because the unlawful detainer claims against American Skiing were properly dismissed, Wolf Mountain's indemnification claim fails because of its inability to satisfy a condition precedent. Under the express terms of the Guaranty, a breach of the Lease or Guaranty by American Skiing is a condition precedent to any indemnification obligation. While Wolf Mountain may have other valid claims against American Skiing that

do not arise from American Skiing's breach of the Lease Agreement or Guaranty, those claims are not at issue here.[4]

**CONCLUSION**

¶ 34 The district court properly dismissed all claims against Wolf Mountain and American Skiing. Under the plain language of the Lease Agreement and Restatement of Agreement, neither American Skiing nor Wolf Mountain is a tenant in possession of the Property. They are therefore not subject to an action for unlawful detainer. We also affirm the district court's dismissal of Wolf Mountain's cross-claims. Because American Skiing has not been adjudicated to be in unlawful detainer of the Property, the facts before the court do not show a breach of the Lease or Guaranty that would give rise to a claim for indemnification. This does not foreclose the possibility that a breach may have occurred based on facts not alleged in this case. But that is an issue for another day. The judgment of the district court is affirmed.

¶ 35 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.

4. Such claims are apparently pending in a separate action between American Skiing and Wolf Mountain.