*This opinion is subject to revision before final publication in the Pacific Reporter*

**2021 UT 7**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SOUTHERN UTAH WILDERNESS ALLIANCE,
*Appellant and Cross-Appellee,*

*v.*

KANE COUNTY COMMISSION,
*Appellee and Cross-Appellant*

and

GARFIELD COUNTY COMMISSION,
*Appellee.*

No. 20180454
Heard September 9, 2020
Filed February 25, 2021

On Direct Appeal

Sixth District, Garfield
The Honorable Marvin D. Bagley
No. 170600020

Attorneys:

David C. Reymann, Austin J. Riter, Salt Lake City, for appellant
and cross-appellee Southern Utah Wilderness Alliance

Shawn T. Welch, Richard D. Flint, Timothy M. Bagshaw, Chelsea
J. Davis, Salt Lake City, for appellee and cross-appellant Kane
County Commission

Peter Stirba, Matthew Strout, Ciera Archuleta, Salt Lake City, for
appellee Garfield County Commission

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1    The Southern Utah Wilderness Alliance (SUWA) accuses the Kane and Garfield County Commissions of violating Utah's Open and Public Meetings Act.[1] According to SUWA, the Commissions violated the Act when they failed to provide public notice or to allow attendance at certain meetings members of the Commissions had with Ryan Zinke, the United States Secretary of the Interior. SUWA claims the meetings were held to discuss the federal government's potential reduction of the Grand Staircase-Escalante National Monument. When SUWA sued to remedy this alleged violation, the district court dismissed its complaint for lack of standing and because it concluded that the Act did not apply to the meetings in question. We reverse this dismissal on both grounds.

¶2    First, we conclude SUWA has standing to bring these claims. The district court determined that SUWA lacked standing because, under the court's interpretation of the Act, the Commissions had not violated SUWA's statutory right. But this analysis mistakenly conflated the issue of standing with the merits of SUWA's claims. And, because SUWA's complaint satisfies our standing requirements, we conclude that SUWA has standing to argue that the Commission violated the Act. Accordingly, we reverse the district court's "standing" determination.

¶3    We also reverse the court's decision on the motion to dismiss. The court dismissed SUWA's complaint based on the court's interpretation of the Act. According to the court, the Act did not apply in this case because the Commissions lacked jurisdiction or advisory power over any action contemplated in the meetings in question. We reverse this decision without offering a definitive interpretation of the Act.[2]

---

[1] UTAH CODE §§ 52-4-101 to 52-4-305.

[2] We decline to offer a definitive interpretation of the Act at this time because our decision to reverse the district court does not require it and our eventual interpretation of the Act would be aided by a developed factual record. *See Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141 (explaining that a clear factual record "facilitates informed decisions").

¶4 We do so because the district court appears to have based its dismissal of SUWA's claims on certain factual assumptions that do not necessarily follow from the allegations in SUWA's complaint. And with a correct view of SUWA's complaint in mind, we conclude SUWA adequately pled a violation of the Act, even were we prepared to accept the district court's interpretation of the Act at this stage of the litigation. Accordingly, we reverse and remand for additional proceedings.[3]

## Background

¶5 On May 10, 2017, the two Commissions met separately with Ryan Zinke, the United States Secretary of the Interior, to discuss the potential reduction of the Grand Staircase-Escalante National Monument (the Monument). The Commissions did not publicly notice these meetings, open them to the public, or keep written minutes of what was addressed. But several months prior to the meetings, the Commissions for both counties had held open, publicly noticed meetings where they passed resolutions expressing their opposition to the Monument and their support for its potential reduction.

¶6 On August 15, 2017, SUWA filed a complaint alleging that the Commissions violated the Act by failing to publicly notice their meetings with Secretary Zinke, open them to the public, or create and make accessible written minutes of what transpired.[4] SUWA also alleged that the content of these meetings included the "potential implications for [the Counties'] political, economic, business, and development interests and relationships; and other

---

[3] We set forth the parties' competing interpretations of the Act in greater detail below. *See infra* ¶¶ 38–43.

We also note that along with dismissing SUWA's complaint, the district court awarded the Commissions attorney fees for defending this lawsuit. Because our conclusion regarding the court's decision on the motion to dismiss also undermines the court's attorney fee award, we likewise reverse it.

[4] SUWA originally filed its complaint in the Third District Court in Salt Lake County. In response, the Commissions asked the Third District Court to dismiss SUWA's complaint for improper venue or transfer the case to a judicial district in which the commissioners reside. The court granted this request and transferred the case to the Sixth District Court, which encompasses both Kane and Garfield Counties.

similar matters over which [the Commissions] exercise jurisdiction or advisory power." Finally, SUWA sought a decree that these meetings violated the Act and an injunction compelling the Commissions to comply with the Act's provisions.

¶7    In response, the Commissions moved to dismiss SUWA's complaint under Utah Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court granted this motion under both rules. It dismissed the complaint under rule 12(b)(6) because it concluded that the Commissions' meetings with Secretary Zinke were not subject to the Act as the Commissions lacked "jurisdiction or advisory power" over the matters discussed.[5] Additionally, the court held that the meetings fell within an exception to the Act because they dealt solely with "administrative or operational matters."[6] And, because the meetings were not subject to the Act, the court ruled that SUWA had not been denied a right under the Act and thus lacked standing under rule 12(b)(1).

¶8    After the court dismissed SUWA's complaint, the Commissions filed a motion for attorney fees under Utah Code section 78B-5-825. They argued they were entitled to attorney fees because SUWA's claims lacked merit and were brought in bad faith. The district court agreed and granted this motion.

¶9    Following this decision, the Commissions submitted their requests for attorney fees. The Kane County Commission requested $60,207.50 in fees, while the Garfield County Commission requested $21,910.00. On April 12, 2019, the district court entered an order awarding the Garfield County Commission its requested amount. But the court reduced the Kane County Commission's award to $30,673.50.

¶10 SUWA now appeals both the dismissal of its complaint and this fee award. The Kane County Commission also appeals the district court's reduction of its fee request. We have jurisdiction under Utah Code section 78A-3-102(3)(j).

---

[5] *See* UTAH CODE § 52-4-103(6)(a) (defining "meeting" as "the convening of a public body . . . for the purpose of discussing, receiving comments from the public about, or acting upon a matter over which the public body . . . has jurisdiction or advisory power").

[6] *Id.* § 52-4-103(6)(c).

**Standard of Review**

¶11  SUWA asks us to decide whether the district court erred in dismissing its complaint under Utah Rule of Civil Procedure 12(b)(1) for lack of standing and Utah Rule of Civil Procedure 12(b)(6) for failure to state a claim. These are questions of law that we review for correctness.[7]

**Analysis**

¶12  SUWA raises two issues. First, it claims the district court erred in dismissing its complaint for lack of standing under Utah Rule of Civil Procedure 12(b)(1). We reverse on this issue because the district court conflated the merits of SUWA's claims with its standing to sue. Merits aside, SUWA has standing because it has statutory authorization to sue and it alleged facts demonstrating a distinct and palpable injury.

¶13 Second, SUWA argues the district court erred in dismissing its complaint for failure to state a claim under Utah Rule of Civil Procedure 12(b)(6). We also reverse on this issue. The district court held, based on its interpretation of the Act, that the Commissions' meetings with Secretary Zinke did not qualify as "meetings" under the Act. But we reverse because, even were we to adopt the court's interpretation of the Act at this stage, we would nevertheless conclude that the allegations in SUWA's complaint were sufficient to survive dismissal.

I. SUWA Has Standing

¶14 SUWA claims the district court erred in dismissing its complaint for lack of standing under rule 12(b)(1). According to the court, SUWA lacked standing because the Commissions' meetings with Secretary Zinke were "not subject to the [A]ct and neither SUWA nor its members were denied a right under the [A]ct." Because this ruling conflates our standing inquiry with the merits of SUWA's claims, we reverse. And after evaluating SUWA's allegations under the appropriate standard, we conclude that SUWA has standing.

---

[7] *Salt Lake Cnty. v. State*, 2020 UT 27, ¶ 14, 466 P.3d 158 (explaining that dismissal of a claim under rule 12(b)(1) "presents a question of law that we review for correctness" (citation omitted)); *Helf v. Chevron U.S.A. Inc.*, 2009 UT 11, ¶ 14, 203 P.3d 962 ("[T]he propriety of a 12(b)(6) dismissal is a question of law." (alteration in original) (citation omitted))).

### A. *The District Court Erred in Conflating Our Standing Inquiry with the Merits of SUWA's Claims*

¶15 The district court held that SUWA lacked standing because the Commissions' meetings with Secretary Zinke did not fall within the statutory definition of "meeting" under the Act. According to the district court, because the meetings were not subject to the Act, neither SUWA nor its members were denied any rights. So they could not show "any injury, let alone a particularized injury." We reject this line of reasoning because it addresses the merits rather than the justiciability of SUWA's claims.[8]

¶16 "[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties."[9] Our traditional standing test requires plaintiffs to allege that they have "suffered or will suffer[] some distinct and palpable injury that gives [them] a personal stake in the outcome of the legal dispute."[10] "At the pleading stage of litigation," plaintiffs may satisfy this test "by alleging that . . . they [have been] injured by the defendant's conduct, so long as the complaint contains adequate factual context to satisfy our notice pleading requirements."[11] "For purposes of a motion to dismiss," such an

---

[8] On appeal, the Garfield County Commission argues the district court's "standing" determination was correct because the meetings in question were not subject to the Act. Additionally, the Kane County Commission argues that SUWA's requested injunction "would be . . . an advisory opinion." As with the reasoning of the district court, these arguments incorrectly conflate the merits of SUWA's complaint with SUWA's standing to bring its legal challenge.

[9] *Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (alteration in original) (citation omitted) (internal quotation marks omitted).

[10] *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 34, 424 P.3d 95 (first alteration in original) (citations omitted) (internal quotation marks omitted).

[11] *Brown v. Div. of Water Rts. of Dep't of Nat. Res.*, 2010 UT 14, ¶ 21, 228 P.3d 747. Our case law sometimes states that a party must "show" or "prove" that the elements of our standing test are satisfied, *see, e.g.*, *Haik v. Jones*, 2018 UT 39, ¶ 18, 427 P.3d 1155 ("[S]tanding 'requires a plaintiff to *show* some distinct and palpable injury that gives rise to a personal stake in the outcome

(Continued)

allegation "will be assumed to 'embrace those specific facts that are necessary to support the claim.'"[12]

¶17 Although "not identical," our standing test is similar to the one used in federal courts.[13] Both tests require a plaintiff to show "that he or she suffered an invasion of a legally protected interest that is concrete and particularized."[14] And in the federal context, the United States Supreme Court has made clear that "standing in no way depends on the merits of the plaintiff's

---

of the dispute.'" (emphasis added) (citation omitted)), and at other times it suggests that the party must only "assert," "claim," or "allege" facts that would satisfy the test. *See, e.g.*, *Cedar Mountain Env't, Inc. v. Tooele Cnty.*, 2009 UT 48, ¶ 8, 214 P.3d 95 (discussing the requirements by using the terms "assert" and "allege"). What is needed to satisfy our standing requirement depends on the stage of the legal proceeding. *Brown*, 2010 UT 14, ¶¶ 13–15. At the pleading stage, plaintiffs are required only to "claim" or "allege" facts showing a legal injury. But where plaintiffs' factual, standing-related allegations are in dispute at later stages, plaintiffs must show or prove standing by satisfying the applicable burden of proof. *See Washington Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶ 4, 82 P.3d 1125 (affirming the district court's dismissal for lack of standing because the party "had not carried its burden of showing a connection between" the challenged action and the alleged harm). In these cases, a court should not decide the standing issue until the evidence in the case makes clear that there is not a genuine dispute as to the relevant facts (in other words, at the summary judgment stage) or until the fact finder has determined which version of the facts is the correct one (at the trial stage).

[12] *Brown*, 2010 UT 14, ¶ 21 (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992)).

[13] *Id.* ¶ 17 ("Although our standing requirements and the federal standing requirements are similar in that they contain the same three basic elements—injury, causation, and redressability—they are not identical.").

[14] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted) (internal quotation marks omitted); *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983) (explaining that under "the traditional test for standing," a plaintiff "must have a legally protectible interest in the controversy").

contention that particular conduct is illegal."[15] As a result, federal courts have consistently recognized that "a plaintiff can have standing despite losing on the merits."[16]

¶18 This is because "whether a plaintiff has alleged an invasion of a 'legally protected interest' does not hinge on whether the conduct alleged to violate a statute does, as a matter of law, violate the statute."[17] To the contrary, where the plaintiff alleges in federal court that an injury arose within a specific factual context, the plaintiff has standing to present a legal theory that would entitle the plaintiff to judicial relief.[18] For this reason, federal courts err when they "conflate[]" the issue of standing with the "validity" of a plaintiff's claim.[19]

¶19 In *Trump v. Hawaii*, the United States Supreme Court recently addressed the distinction between the merits of a plaintiff's claim and whether he or she has shown a particularized injury.[20] There, plaintiffs with "relatives from Iran, Syria, and Yemen applying for . . . visas" challenged a presidential proclamation that restricted, on national-security grounds, the

---

[15] *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) ("[O]ne must not 'confus[e] weakness on the merits with absence of Article III standing.'" (alteration in original) (quoting *Davis v. U.S.*, 564 U.S. 229, 249 n.10 (2011))); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal." (alteration in original) (citation omitted) (internal quotation marks omitted)).

[16] *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1172 (10th Cir. 2006) (citations omitted); *see also id.* ("[A]n interest can support standing even if it is not protected by law (at least, not protected in the particular case at issue) so long as it is the sort of interest that courts think to be of sufficient moment to justify judicial intervention.").

[17] *Cottrell v. Alcon Lab'y*, 874 F.3d 154, 164 (3d Cir. 2017).

[18] *See Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1094 (10th Cir. 2006).

[19] *Dean v. Blumenthal*, 577 F.3d 60, 66 n.4 (2d Cir. 2009).

[20] 138 S. Ct. 2392 (2018).

ability of nationals from several countries with Muslim-majority populations to enter the United States.[21] According to the plaintiffs, this proclamation violated the Establishment Clause of the First Amendment "because it was motivated not by concerns pertaining to national security but by animus toward Islam."[22] The government argued that these plaintiffs lacked standing "because the Clause does not give them a legally protected interest in the admission of particular foreign nationals."[23] The Court rejected this argument because it "concern[ed] the merits rather than the justiciability of [the] plaintiffs' claims."[24] In other words, whether the plaintiffs had standing did not "depend[] upon the scope of [their] Establishment Clause rights."[25] What mattered was that they alleged a "concrete injury: the alleged real-world effect that the [p]roclamation . . . had in keeping them separated from [their] relatives."[26]

¶20 We find this line of reasoning persuasive and adopt it here. Accordingly, where a plaintiff alleges that he or she has been injured in a distinct and palpable manner, a court has the authority to determine whether that injury constitutes an infringement of a judicially protected interest. In such circumstances, the plaintiff has standing and the dispute presented by the plaintiff is "fit for judicial resolution."[27]

---

[21] *Id.* at 2404–06.

[22] *Id.* at 2406.

[23] *Id.* at 2416.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Utah Chapter of Sierra Club v. Utah Air Quality Bd.*, 2006 UT 74, ¶ 17, 148 P.3d 960 (citation omitted); *see also Cottrell*, 874 F.3d at 164 (explaining that whether a plaintiff has standing "does not hinge on whether the conduct alleged to violate a statute does, as a matter of law, violate the statute"); *Initiative and Referendum Inst.*, 450 F.3d at 1093 ("[W]here the plaintiff presents a nonfrivolous legal challenge, alleging an injury to a protected right . . . , the federal courts may not dismiss for lack of standing on the theory that the underlying interest is not legally protected.").

¶21 Based on this reasoning, we determine that the district court erred in concluding that SUWA lacked standing. The court's conclusion that the meetings with Secretary Zinke were not subject to the Act ultimately depends on an interpretation of the Act's scope and the nature of what was discussed in the meetings. It therefore "concerns the merits rather than the justiciability" of SUWA's claims.[28] Rather than assess the merits of SUWA's claims, the district court should have determined whether the facts in SUWA's complaint satisfied our "standing" requirements. By doing otherwise, the court incorrectly conflated those requirements with the validity of SUWA's claims.

### B. SUWA Has Standing on Behalf of Its Members

¶22 Having established that SUWA's standing does not depend on the merits of its claims, we turn now to the proper question: whether SUWA alleged sufficient facts to demonstrate a distinct and palpable injury.[29] We hold that it did, and so we conclude that SUWA has standing to sue on behalf of its members.

¶23 This court has crafted a "three-step inquiry to determine whether [standing] exists."[30] First, plaintiffs must assert that they have been or will be "adversely affected by the [challenged] actions."[31] Second, they must "allege a causal relationship

---

[28] *Trump*, 138 S. Ct. at 2416.

[29] *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 19. Because SUWA raises claims on behalf of its members, we must conduct this inquiry "through the lens of associational standing." *Id.* at ¶ 21. Associations like SUWA have standing "if [their] individual members have standing and the participation of the individual members is not necessary to the resolution of the case." *Id.* In this case, neither Commission argues that the participation of SUWA's individual members is necessary to the resolution of this case. So, to improve readability, we analyze our standing requirements by discussing the statutory rights conferred on SUWA's members and the injuries allegedly suffered by those members as though they belong to SUWA.

[30] *Alpine Homes*, 2017 UT 45, ¶ 34. We often refer to this inquiry as our "distinct and palpable injury" test. *Id.*

[31] *Id.* (alteration in original) (citation omitted).

between [their] injury [and] the [challenged] actions."[32] And third, "the relief requested must be substantially likely to redress the injury claimed."[33] "[E]ach step must be demonstrated in order to confirm standing."[34]

1. SUWA satisfies the "adversely affected" requirement

¶24 SUWA argues that it was adversely affected because it was denied a statutory right to receive notice of, and to attend, meetings held by members of the Commissions. When a party argues that a right conferred by statute has been violated, we resolve the "adversely affected" issue by first determining "what class of plaintiffs the [statute] grants a right to sue and whether [the plaintiff in the case] is within that class."[35] In other words, we must determine whether the plaintiff has a "legally protectible interest" conferred by statute.[36]

¶25 This part of the analysis looks at the rights generally conferred by the statute. So in this case we must determine whether the Act generally provides SUWA with a right to sue for violations of the Act. We conclude that it does.

¶26 The Act grants a right to "24 hours' public notice" of meetings held by the Commissions,[37] the right to have those meetings kept "open to the public,"[38] and the right to access the meetings' written minutes.[39] It also states that "[a] person denied any [of these] rights" may sue to "compel compliance with or enjoin violations" of the Act or to "determine the [Act's] applicability to discussions or decisions of a public body."[40] Based

---

[32] *Id.* (third alteration in original) (citation omitted) (internal quotation marks omitted).

[33] *Id.* (citation omitted) (internal quotation marks omitted).

[34] *Id.*

[35] *Rupp v. Moffo*, 2015 UT 71, ¶ 9, 358 P.3d 1060. We commonly refer to standing that is derived from a statutory right as "statutory standing." *See Cedar Mountain*, 2009 UT 48, ¶ 13.

[36] *Jenkins*, 675 P.2d at 1148.

[37] UTAH CODE § 52-4-202(1).

[38] *Id.* § 52-4-201(1).

[39] *Id.* § 52-4-203.

[40] *Id.* § 52-4-303(3).

on these provisions, we conclude that SUWA falls within the class of persons sought to be protected by the Act and that the Act provides SUWA with a right to sue for violations of the Act. But that does not end the "adversely affected" inquiry.

¶27 Where a plaintiff falls within a class protected by statute, we must also determine, based on the specific facts in the case, whether the plaintiff has suffered "some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute."[41] At the pleading stage, this merely requires the plaintiff to plead an "adequate factual context to satisfy our notice pleading requirements."[42] In other words, the plaintiff must allege facts sufficient to make the defendant reasonably aware of the conduct it allegedly engaged in and of how that conduct allegedly injured the plaintiff. SUWA satisfies this test.

¶28 In its complaint, SUWA pled enough facts to show that the Commissions' alleged violation of the Act adversely affected it. According to SUWA, on May 10, 2017, members of the Commissions participated in two meetings with Secretary Zinke, but the Commissions failed to provide public notice of the meetings or open them to the public. So SUWA did not receive the notice to which it believes it was entitled and was unable to attend a meeting it wished to attend. This is enough to show that it was adversely affected by the Commissions' alleged violation.

¶29 The Kane County Commission argues it is not "sufficient simply to allege an injury of rights conferred" by the Act. It claims a plaintiff cannot meet our "constitutional standing requirements" by simply "alleg[ing] an injury within the scope of a statute." Although we agree that plaintiffs must satisfy our traditional standing requirements, we reject the Kane County Commission's argument because SUWA has met those requirements in this case. SUWA has done more than "simply allege an injury of rights conferred by the Act." It has alleged specific facts that would amount to a violation of SUWA's statutory rights by the Commissions if SUWA succeeds on its legal argument. In so doing, SUWA presents "a concrete dispute" about the requirements of existing law as applied to a specific set of facts

---

[41] *Jenkins*, 675 P.2d at 1148.

[42] *Brown*, 2010 UT 14, ¶ 21.

rather than "an academic dispute about the . . . harms" of holding closed meetings generally.[43]

¶30 Because SUWA falls within the class the Act seeks to protect and because SUWA has alleged a set of facts in which its statutory rights were allegedly violated (if a court rules that SUWA's interpretation of the Act is correct), it has satisfied the "adverse effect" requirement.

2. SUWA satisfies the "causation" requirement

¶31 SUWA has also sufficiently alleged causation. It alleged that three of its members were present "in Kane and Garfield County when the meetings [with Secretary Zinke] occurred" and that those members "would have attended and participated if [the Commissions] had properly noticed the meetings under the Act and kept [them] open to the public." In other words, SUWA has alleged that but for the Commissions' failure to publicly notice the meetings or allow the public to attend the meetings, its members would have attended the meetings. These allegations satisfy the causation requirement.

3. SUWA satisfies the "redressability" requirement

¶32 Finally, SUWA satisfies the "redressability" requirement. Based on the Commissions' alleged violations, SUWA seeks "a decree that the [meetings] violated the Act" and "an injunction compelling [the Commissions' future] compliance with the Act." In light of these statutorily authorized remedies, we conclude that SUWA satisfies the redressability requirement.

¶33 The district court concluded that SUWA had not suffered a redressable injury because the meetings had already taken place and neither Commission had taken an action at those meetings that the court could undo. But section 52-4-203 of the Act obligates public bodies to keep written minutes of all meetings subject to the Act. These minutes must include, among other things, "the substance of all matters proposed, discussed, or decided by the public body which may include a summary of comments made by members of the public body."[44] Following a meeting, a public body has thirty days to make a pending, draft form of these

---

[43] *Utah Chapter of Sierra Club*, 2006 UT 74, ¶ 26.

[44] UTAH CODE § 52-4-203(2)(a)(iii).

written minutes available to the public.[45] And it has three days following the approval of pending minutes to make the approved minutes available.[46] In its complaint, SUWA alleged that the Commissions violated these statutory obligations.

¶34 So if SUWA prevails on the merits of its claims, the district court could redress, at least in part, the harm SUWA suffered by requiring the Commissions to comply with these requirements to the extent possible.[47] For this reason, we conclude that SUWA's complaint satisfies the redressability requirement.

¶35 Accordingly, we conclude that SUWA's individual members have standing in this case.

## II. The District Court Erred in Dismissing SUWA's Claims

¶36 We turn now to the district court's dismissal of SUWA's claims. SUWA claims the district court erred in dismissing its complaint under rule 12(b)(6). We agree. Because the allegations in SUWA's complaint were sufficient even were we to adopt the district court's interpretation of the Act, we reverse the district court's dismissal of SUWA's complaint.

¶37 Rule 12(b)(6) allows a district court to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A [r]ule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts."[48] But although "we accept the plaintiff's description of [the] facts alleged in the complaint to be true," we need not "accept legal conclusions in contradiction of the pleaded facts."[49]

---

[45] *Id.* § 52-4-203(4)(e)–(f).

[46] *Id.*

[47] It is possible, of course, that no recordings of the meetings exist. If this is true, then the court could redress SUWA's injury by ordering the Commissions to provide a written summary of "the substance of all matters proposed, discussed, or decided" by the Commissions at the meetings. *See id.* § 52-4-203(2)(a)(iii).

[48] *Oakwood Vill., LLC v. Albertsons, Inc.,* 2004 UT 101, ¶ 8, 104 P.3d 1226 (citations omitted).

[49] *Osguthorpe v. Wolf Mountain Resorts, L.C.,* 2010 UT 29, ¶ 10, 232 P.3d 999 (citation omitted) (internal quotation marks omitted).

¶38  The district court held that SUWA failed to state a claim under the Act because the Commissions' discussions with Secretary Zinke did not fit the Act's definition of "meetings." The Act defines a "meeting" as "the convening of a public body . . . with a quorum present . . . for the purpose of discussing . . . or acting upon a matter over which [it] . . . has jurisdiction or advisory power."[50] In interpreting this provision, the district court determined that the Commissions "have no jurisdiction or advisory power in the matter" discussed at the meetings at issue, because members of the Commissions met with the Secretary to discuss "a potential change" to the Monument's boundaries—something "only Congress or the President" have authority to do. In so ruling, it appears the court interpreted the statutory phrase "a matter over which [the Commissions] ha[ve] jurisdiction or advisory power" to include only meetings in which the Commissions take an action within their authority or in which they discuss or consider taking an action within their authority. SUWA appeals this determination.

¶39  According to SUWA, the meetings qualify because the purpose of the meetings was to discuss the implications of a possible revocation of the Monument on the counties' "political, economic, business, and development interests and relationships."

¶40  To be clear, SUWA does not argue that the Commissions had any authority over the federal government's potential decision to revoke the Monument. But, because the Commissions have been granted broad powers related to the counties' interests,[51] and because a topic discussed at the meetings was the possible effect of a federal action on the counties' interests, SUWA argues that the meetings' purpose was to discuss a matter over which the Commissions have jurisdiction or advisory power. So SUWA interprets the phrase "a matter over which [the Commissions] ha[ve] jurisdiction or advisory power" to include any meeting in which a proposed action that could affect the

---

[50] UTAH CODE § 52-4-103(6)(a).

[51] *Id.* § 17-50-302(1)(a)(ii) (stating that a county may "provide a service, exercise a power, or perform a function that is reasonably related to the safety, health, morals, and welfare of county inhabitants").

counties' interests is discussed, even if the Commissions have no authority over the proposed action.

¶41 The Commissions, in contrast, argue in support of the district court's interpretation of the Act. They contend that the Act's definition of "meeting" does not include the meetings in question because the Commissions lack jurisdiction or advisory power over the federal government's potential decision to revoke the Monument, which was the only potential action discussed at the meetings. In other words, the Commissions, like the district court, interpret the phrase "a matter over which [the Commissions] ha[ve] jurisdiction or advisory power" to include only meetings in which the Commissions take an action within their authority or in which they discuss or consider taking an action within their authority.

¶42 As the parties have framed the dispute, the ultimate success or failure of their respective arguments depends on how we define the term "matter" as it is used in the Act. Under SUWA's interpretation, the term "matter" takes on a broad meaning that is roughly synonymous with the term "topic"[52] or "subject."[53] Were we to interpret "matter" in this way, the meetings would be governed by the Act because the Commissions discussed a *topic* over which the Commissions have jurisdiction or advisory power: county interests.

¶43 The Commissions' argument, on the other hand, suggests that the "matter" discussed at the meeting should be viewed more narrowly as the potential revocation of the Monument. Under this view, the term "matter" is defined as "a subject or situation that you must consider or deal with."[54] So under the Commissions'

---

[52] *Topic*, Collins Dictionary Online, https://www.collinsdictionary.com/dictionary/english/topic (last visited January 7, 2021) ("A topic is a particular subject that you discuss or write about.").

[53] *Subject*, Collins Dictionary Online, https://www.collinsdictionary.com/dictionary/english/subject (last visited January 7, 2021) ("The subject of something such as a conversation, letter, or book is the thing that is being discussed or written about.").

[54] *Matter*, Oxford Learner's Dictionary, https://www.oxfordlearnersdictionaries.com/us/definition/english/matter_1?q=matter (last visited January 7, 2021); *see also*

(Continued)

definition, a "matter" is a "subject" or "situation" that necessitates a decision to be made or an action to be taken. And based on this interpretation, the Commissions ask us to affirm the district court.

¶44 But even though the district court's interpretation of the Act may be correct, we nevertheless reverse the district court's order dismissing SUWA's complaint because the allegations in SUWA's complaint were sufficient even were we to one day adopt the district court's interpretation of the statute.

¶45 As we have noted, the district court dismissed SUWA's complaint because the Commissions had no authority to reduce the size of the Monument. In other words, the court dismissed SUWA's complaint because, in the court's view, the Commissions had no authority over any official action that was discussed or taken at the meetings in question. But this decision incorrectly assumes that the only potential action discussed at the meetings was the federal government's revocation of the Monument. This assumption overlooks key portions of SUWA's complaint.

¶46 In its complaint, SUWA first alleges that "the subject matter of the discussions at the Closed Meetings involved, among other things, the possible partial revocation of the Grand Staircase-Escalante National Monument." As the district court interprets the Act, this would not qualify as a meeting because the Commissions have no jurisdiction or advisory power over the discussed action—the revocation of the Monument. But that is not the only alleged "matter" contained in SUWA's complaint. SUWA also alleges the Commissions discussed the "potential implications" the Monument revocation would have "for Kane County's and Garfield County's political, economic, business, and development interests and relationships" as well as "other similar matters over which [the Commissions] exercise jurisdiction [or] advisory power." This is enough to satisfy SUWA's pleading obligations even were we to accept the district court's interpretation of the Act.

---

*Matter*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/matter (last visited January 7, 2021) ("[A] subject under consideration."); *Matter*, NEW WORLD DICTIONARY OF AMERICAN ENGLISH (3d ed. 1988) ("[S]omething that is the subject of discussion, concern, action.").

¶47 SUWA's allegation that the Commissions discussed the "potential implications" of the Monument revocation on a wide variety of county interests in addition to SUWA's allegation that the Commissions discussed "other similar matters over which [the Commissions] exercise jurisdiction [or] advisory power" can reasonably be interpreted as stating that the Commissions discussed taking some action in anticipation of[55] or in response to[56] the federal government's decision to reduce the Monument. So even under the district court's interpretation of the Act, SUWA's complaint contains sufficient allegations to survive a motion to dismiss.

¶48 Accordingly, because SUWA sufficiently alleged a violation of the Act, even under the district court's interpretation of the statute, we reverse the district court's dismissal of SUWA's complaint.[57]

¶49 Finally we note, as we did in *SUWA v. San Juan County*—a companion case also issuing today—that for other types of claims SUWA's allegations might not satisfy the pleading requirements contained in rule 8 of the Utah Rules of Civil Procedure.[58] But our decision is motivated, in part, by the disadvantaged position of potential plaintiffs who bring a lawsuit to enforce the Act.

---

[55] As SUWA points out, in previous meetings the Commissions did rely on their authority to pass resolutions in favor of the federal government's potential reduction of the Monument.

[56] As SUWA also points out, the Commissions have the general authority to "provide a service, exercise a power, or perform a function that is reasonably related to the safety, health, morals, and welfare of county inhabitants." *See* UTAH CODE § 17-50-302(1)(a)(ii).

[57] The district court also held that the Commissions' discussions with Secretary Zinke fell within an exception to the Act's requirements for meetings that deal solely with "administrative or operational matters." *Id.* § 52-4-103(6)(c). Because we do not yet know what was discussed at the meetings in question, we decline to decide whether those meetings fall within this exception at this stage.

[58] *See* 2021 UT __, ¶¶ 38–39, ---P.3d---.

¶50 Rule 8 requires that all claims for relief contain a "statement of the claim showing that the party is entitled to relief" and a "demand for judgment for specified relief."[59] Rule 8 also requires courts to construe all pleadings "to do substantial justice."[60] Taken together, these requirements lead to a "context specific and flexible" approach in applying our rules to parties' pleadings.[61]

¶51 Under this approach we require only "that the basis of [the] claim must be stated with reasonable certainty and clarity, so the other party will have notice of what he is obliged to meet."[62] In other words, pleadings are "sufficient" where they "give fair notice of the nature and basis of the claim asserted and a general indication of the type of litigation involved."[63]

¶52 And what is required to provide "fair notice" depends on the type of claim. For example, in *Berg v. Berg*, the court of appeals allowed a claim for conversion to go forward even though the pleading was "imprecise," because the pleading could be fairly read to "indicate[] a claim for conversion" and it identified the property at issue.[64] For other claims, however, a plaintiff "must state with particularity the circumstances" surrounding the claim.[65]

¶53 Yet even for those claims, our "context specific and flexible" approach sometimes leads us to relax the pleading standard. For example, in *State v. Apotex Corp.*, we considered the adequacy of a claim under Utah's False Claims Act. Although we concluded that claims under that Act were subject to our heightened pleading requirement, we explained that our

---

[59] UTAH R. CIV. P. 8(a).

[60] *Id.* 8(f).

[61] *State v. Apotex Corp.*, 2012 UT 36, ¶ 27, 282 P.3d 66 (citation omitted).

[62] *Christopher v. Larson Ford Sales, Inc.*, 557 P.2d 1009, 1011 (Utah 1976).

[63] *Gudmundson v. Del Ozone*, 2010 UT 33, ¶ 40, 232 P.3d 1059 (citation omitted).

[64] 2012 UT App 142, ¶ 10, 278 P.3d 1071.

[65] *See* UTAH R. CIV. P. 9(c) (requiring "fraud" and "mistake" claims to be pled with particularity).

"heightened pleading standard may be applied less stringently when the specific factual information is peculiarly within the defendant's knowledge or control."[66] For this reason, and "to achieve the remedial purpose" of the False Claims Act, we held that a claim was sufficient so long as it provided "reliable indicia that lead to a strong inference" that a statutory violation occurred.[67]

¶54  In this case, we similarly set forth a relaxed standard for claims arising under Utah's Open and Public Meetings Act.[68] In so doing, we note that it is likely that most cases seeking to enforce the Act will have arisen because the plaintiff was prevented from knowing what took place at a meeting allegedly governed by the Act. Were we to require the plaintiff to allege the "matter" discussed at the meetings more specifically, the government's alleged statutory violation—the failure to inform the public about a meeting—would insulate the government from suit in almost all cases. Rule 8 does not require this result.

¶55  Rather, rule 8 requires only that the pleadings provide the other party with adequate notice regarding the nature of the claims or defenses. In the context of the Act, pleadings will provide defendants with adequate notice when they specifically identify the meeting or meetings at issue and contain "reliable indicia that lead to a strong inference" that "matters" under the public body's jurisdiction were discussed.[69] SUWA's pleadings satisfy this standard. SUWA has specifically identified meetings in which its alleged violations of the Act occurred and it has alleged factual circumstances leading to a strong inference that statutory violations took place. In short, SUWA's complaint provides the Commissions adequate notice and a fair opportunity to respond to SUWA's claims.

---

[66] *Apotex*, 2012 UT 36, ¶ 27 (citation omitted).

[67] *Id.* ¶ 20 (citation omitted).

[68] We are, of course, aware that claims under the Open Meetings Act are not subject to the heightened pleading standard in rule 9(c). So we cite our decision in *Apotex* only to provide an example of how we have previously applied our context–specific and flexible approach to pleading requirements.

[69] *Apotex*, 2012 UT 36, ¶ 20 (citation omitted).

**Conclusion**

¶56  SUWA has standing. It falls within the class of people the Act seeks to protect. And SUWA alleged facts demonstrating a distinct and palpable injury. The fact that it may not ultimately prevail under those facts is not relevant to the standing inquiry. So we reverse the district court's "standing" decision.

¶57 We also reverse the district court's decision to dismiss SUWA's complaint. Although the court dismissed SUWA's complaint based on an interpretation of the Act that may be correct, we nevertheless reverse the court's decision without offering a final interpretation of the Act because, even under the district court's interpretation, the allegations in SUWA's complaint were sufficient to survive a motion to dismiss.[70]

---

[70] As we already noted, we decline to offer a definitive interpretation of the Act at this time because our decision to reverse the district court does not require it and our eventual interpretation of the Act would be aided by a developed factual record. *See Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141 (explaining that a clear factual record "facilitates informed decisions").